COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Willis and Clements
Argued at Richmond, Virginia


CHARLES M. POTTER

MEMORANDUM OPINION* BY
v.    Record No. 0921-01-2            JUDGE JAMES W. BENTON, JR.
                                          FEBRUARY 12, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF RICHMOND COUNTY
Joseph E. Spruill, Jr., Judge

James T. Maloney for appellant.

Amy L. Marshall, Assistant Attorney General
(Randolph A. Beales, Attorney General, on
brief), for appellee.


The trial judge convicted Charles M. Potter of disorderly conduct in violation of Code § 18.2-415. Potter contends the evidence was insufficient to support the conviction. We affirm the conviction.

I.

Viewed in the light most favorable to the Commonwealth, Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997), the evidence proved that a judge previously had ordered Donna Dodson and her former husband, David Dodson, to go to the Richmond County Police Station to exchange physical custody of their two children during each change in visitation. On October

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

20, 2000, the children's mother delivered the children to their paternal grandparents at the police station while her fiancé, Charles M. Potter, waited for her at another location. The mother testified that a judge had ordered Potter to stay away from the place where the exchange was to occur.

The children's father had to work late and asked his parents to get the children. The mother testified that she "usually let the grandparents pick them up sometimes" and that she had "no problem with that." After the grandparents received the children at the police station, they took the children to a restaurant where they intended to have dinner. There they met Donna Rush, the children's father's fiancée.

Rush and the grandmother testified that, as they were waiting to enter the restaurant, they saw the mother and Potter drive onto the restaurant's parking lot. The car twice went around the restaurant, exited the parking lot, and then stopped in an adjacent parking lot. Because the restaurant was crowded, the grandparents and Rush decided to go to another restaurant. The grandparents put the older child in their car and drove away. As the grandparents were leaving the restaurant's parking lot, the mother's car passed them and again entered the restaurant's parking lot. Potter was "calling, [to the grandparents] where is [the children's father]."

As Rush was getting into her car with the younger child, the mother drove to Rush's car and stopped such that the front of the

-

mother's car was pointing toward the side of Rush's car.  Potter exited the mother's car, "hollering and screaming," and approached Rush "in a very intimidating manner."  He cursed her and took photographs of her.  Rush then entered her car and drove toward the other restaurant.  The mother and Potter followed Rush, driving "right up on [Rush's] bumper."  Rush stopped her car before she got to the other restaurant to allow them to pass.  Instead, they stopped their car "facing [Rush's car] head-on."  Both the mother and Potter screamed and cursed at Rush while Potter again approached Rush's car with his camera.  Rush testified that she drove by the mother's car and stopped in the restaurant's parking lot.

The grandmother testified that she saw the mother's car following close behind Rush's car when Rush left the first restaurant.  At the second restaurant, the grandmother and the grandfather went to the mother's car.  The grandmother said to Potter, "What is going on?"  The grandmother testified that Potter "was in a rage," cursed her, and swung at her.  She then swung at him.  Neither one actually hit the other.  The police then arrived.

The trial judge found that Potter improperly injected himself in the situation and created a problem by following Rush to the other restaurant.  He found that Potter was "there to provoke something.  To confront somebody with a camera and take

-

a flash photograph is an offensive gesture."  The judge

convicted Potter of disorderly conduct.

                                 II.

     In pertinent part, Code § 18.2-415 provides as follows:

>      A person is guilty of disorderly conduct
> if, with the intent to cause public
> inconvenience, annoyance or alarm, or
> recklessly creating a risk thereof, he . . .
> engages in conduct [in any street, highway,
> public building, or while in or on a public
> conveyance, or public place] having a direct
> tendency to cause acts of violence by the
> person or persons at whom, individually,
> such conduct is directed . . . .

     In his ruling, the trial judge noted that the evidence was

conflicting on some issues.  For example, it was disputed

whether the judge in a prior proceeding had ordered Rush not to

be present with the children without their father.  Although one

of the children testified that she heard, while standing outside

a courtroom, conversation from inside that Rush "was not

supposed to have [either of the children]," Rush testified that

no judge had barred her from the presence of the children.  On

the other hand, the mother testified that Potter had been barred

from being present at the exchanges but that the judge only had

said "that it would be best that [Rush] did not pick up the

children."  The trial judge reasonably could conclude that by

instructing Potter to stay away from the exchange, the other

judge sought to preclude confrontations between the parties and

to avoid the type of events that transpired after this exchange.

                                 -

According to well established principles, we assume that the trial judge resolved the conflicting evidence against Potter. We cannot say that he erred in so doing. "[T]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985).

The evidence proved that Potter doggedly pursued Rush with a camera and cursed her in an intimidating manner. He had been ordered not to be present during the visitation exchange, which had just earlier occurred. After he and the mother followed close on the bumper of Rush's car, Potter again brandished the camera and cursed Rush. Eventually the incident resulted in Potter swinging at the grandmother and her then swinging at him. From this evidence, the trial judge could conclude that Potter's conduct created a risk of violence in instigating these confrontations. The statute proscribes this type of conduct.

Accordingly, we hold that the evidence was sufficient to prove beyond a reasonable doubt that Potter committed the charged offense. We, therefore, affirm the conviction.

Affirmed.

-